## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br><br>    Plaintiff,<br><br>    v.<br><br>DMB Financial, LLC,<br><br>    Defendant. | Case No. 1:20-cv-12147 |

## COMPLAINT

The Bureau of Consumer Financial Protection (Bureau) brings this action against DMB Financial, LLC (DMB) and alleges as follows.

## INTRODUCTION

1. The Bureau brings this action under the Telemarketing and Consumer Fraud and Abuse Prevention Act (Telemarketing Act), 15 U.S.C. §§ 6102(c), 6105(d); the Telemarketing Sales Rule (TSR), 16 C.F.R. pt. 310; and the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a), 5564, 5565, in connection with the marketing and sale of debt-settlement or debt-relief services.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over this action because it is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

3. Venue is proper because DMB is located or resides or does business in this district. 12 U.S.C. § 5564(f).

## PARTIES

4. The Bureau is an independent agency of the United States created by the CFPA. 12 U.S.C. § 5491(a). It has independent litigating authority and may secure appropriate relief for violations of the CFPA, 12 U.S.C. § 5564(a)–(b), and the TSR, 15 U.S.C. §§ 6102(c), 6105(d).

5. DMB, a Massachusetts limited-liability company, maintains its principal place of business at 500 Cummings Center, Suite 3800, Beverly, Massachusetts 01915.

6. DMB offers and provides "financial advisory services," including debt-settlement services, to consumers owing unsecured debts to creditors. Those activities are "consumer financial services or products" under the CFPA. 12 U.S.C. § 5481(5)(A), (15)(A)(viii)(II). DMB is therefore a "covered person" under the CFPA. 12 U.S.C. § 5481(6).

7. In connection with a campaign to make interstate phone calls to consumers and to use advertisements to solicit calls from consumers to induce them to purchase its services, wherein DMB offers to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, DMB initiates and receives telephone calls from consumers. Thus, DMB is a "telemarketer" offering a "debt relief service" under the TSR. 16 C.F.R. § 310.2(o), (ff).

## FACTUAL BACKGROUND

8. DMB is a debt-settlement company. Established in 2003, DMB claims that it has successfully negotiated and settled consumer debts in excess of $1 billion for over 30,000 consumers who have enrolled in its debt-settlement programs.

9. DMB's debt-settlement programs are advertised to consumers through DMB's website and direct-mail campaigns, which advertise a toll-free telephone number that consumers

could call to enroll in DMB's programs, and by outside marketing companies through the use of live-transfer companies or lead generators that direct consumers to DMB.

10. DMB's employees have received phone calls from prospective customers and have initiated phone calls to prospective customers in at least 24 states to persuade them to enroll in its debt-settlement programs.

11. DMB has instructed consumers who had been making payments to their creditors to withhold any further payments. Because DMB requires consumers to stop paying creditors, its programs are likely to result in increased interest and fees after enrollment.

12. DMB has required consumers enrolled in its debt-settlement program to deposit funds into dedicated accounts with an FDIC-insured account provider. DMB has claimed that once there were sufficient funds in those accounts to make settlement offers to consumers' creditors, DMB would negotiate with the creditors to persuade them to accept less than the individual debt amounts owed.

13. When an individual debt enrolled in its debt-settlement program was settled or a creditor ceased attempts to collect the debt (in the absence of a settlement), DMB would charge consumers fees.

### The Financial Liberty Program and the Financial Independence Program

14. Since at least 2012, DMB has offered two debt-settlement programs: the Financial Liberty Program (Liberty Program) and the Financial Independence Program (Independence Program). The only difference between the programs is how DMB structures the fee charged to consumers. Consumers enrolled in the Liberty Program pay DMB a settlement fee that is a percentage of the consumer's debt balance. Consumers enrolled in the Independence Program

pay DMB a settlement fee that is a percentage of what consumers saved as a result of any debt settlement that DMB secures for consumers.

15. To enroll in the Liberty Program, DMB required consumers to complete and sign a Debt Settlement & Negotiation Services Agreement (the Liberty Enrollment Agreement) and a Financial Program Questionnaire (the Liberty Questionnaire).

16. To enroll in the Independence Program, DMB required consumers to complete and sign a Debt Settlement & Negotiation Services Agreement (the Independence Enrollment Agreement) and a Financial Program Questionnaire (the Independence Questionnaire).

17. The Independence Enrollment Agreement and the Liberty Enrollment Agreement state: "I understand that my commitment is essential for the success of this Program and settlements will not be attempted until I have saved sufficient funds in my designated Savings Account."

18. The Independence Questionnaire and the Liberty Questionnaire require that consumers initial the following statement: "You agree to commit to the DMB Financial [Liberty/Independence] Program, whereby our average Client negotiates and settles their outstanding debts for approximately 50% of the total amount due at the time of settlement, in 36 months, with no prepayment penalties."

## DMB's Method of Calculating Fees

19. Some versions of DMB's Liberty Enrollment Agreement stated that the consumer "agrees to pay the Company a fee in the amount of [___]% of the Enrolled Debt on each given account negotiated and settled under the Program." These agreements also described the "Fee Structure" as a "[p]er settlement fee of [___]% of debt balance as determined at time of enrollment."

4

20. Some versions of DMB's Independence Enrollment Agreement stated that the consumer "agrees to pay the Company a fee in the amount of [__]% of the Amount Saved by the Company on each given account negotiated and settled under the Program (that is, the difference between the creditors' claim amount (at the time of enrollment negotiations) and the agreed upon Final Settlement Payment)." The Independence Enrollment Agreement also described the "Fee Structure" as a "[p]er settlement fee of [__]% of savings off debt balance as determined at time of enrollment."

21. Completed Liberty and Independence Enrollment Agreements included a Creditor Summary Page, which listed, among other things, each debt enrolled in the program and the debt balance at the time of enrollment.

22. Despite representations in these enrollment materials that DMB's fee would be a percentage of, or the savings off of, the enrolled debt, DMB charged enrolled consumers a fee based on what DMB called the "Verified Debt."

23. The Verified Debt amounts were often greater than the debt amounts listed on the Creditor Summary Page.

24. Before 2019, DMB used the term "Verified Debt Amount" to mean the amount of debt verified by DMB based on a creditor statement submitted by the consumer, or when no creditor statement was provided, the debt balance at the time DMB contacted the creditor to negotiate a settlement.

25. Beginning in 2019, DMB began verifying debt amounts based on the amount reported on the consumer's consumer credit report, which was obtained at or near the time of enrollment.

26. Until 2019, if DMB never received a creditor statement submitted by a consumer for a particular debt, DMB calculated its settlement fee based on the debt amount after enrollment—often the debt amount at the time of settlement—instead of the debt amount at the time of enrollment.

27. The debt amount after enrollment is often greater than the debt amount at the time of enrollment because the debt continues to accrue interest and fees until a settlement is reached.

### DMB's Charging of Deceptive and Unlawful Fees

28. Since at least 2012, the Liberty and Independence Enrollment Agreements have stated: "The Client agrees to pay the Company a fee . . . on each given account negotiated and settled under the Program. . . . Once Client receives an offer from any creditor enrolled in program, accepts and makes first payment toward settlement, Company is entitled to receive its full fee proportional to debt enrolled."

29. In two scenarios, DMB charged consumers its fee contrary to the terms of its enrollment agreements: (1) DMB charged some consumers its fee when DMB had not successfully settled consumers' debts; and (2) DMB charged some consumers its fee before consumers had made a first payment toward settlement.

30. DMB requested or received fees from at least hundreds of consumers when a creditor, in the absence of a binding settlement, stopped collecting from a consumer, sometimes following a charge-off. In such circumstances, the consumer had not executed a settlement agreement and had made no settlement payment to the creditor or any debt collector before DMB charged its fee. These consumers could still be subject to collection efforts, including real or threatened litigation, and their credit reports could continue to reflect an unpaid or delinquent debt in the trade line for that creditor. DMB did not disclose to consumers that it would charge

6

its fee under these circumstances, and consumers did not agree when they enrolled in DMB's programs to pay fees in these circumstances.

31. DMB requested or received fees from thousands of consumers even though the consumers had not yet made at least one payment under a settlement agreement, debt-management plan, or other valid contractual agreement. DMB did not disclose to consumers that it would charge its fee in this circumstance, and consumers did not agree when they enrolled in DMB's programs to pay fees in this circumstance.

### Count 1
*DMB's Violations of the TSR and the CFPA*
*(Charging Advance Fees)*

32. The Bureau incorporates by reference the allegations contained in Paragraphs 1 through 31 of this Complaint.

33. It is a violation of the TSR for any seller or telemarketer in connection with the sale of any debt-relief service to request or receive payment of any fee or consideration for any debt-relief service until and unless, in addition to other requirements, the customer has made at least one payment under that settlement agreement, debt-management plan, or other valid contractual agreement between the customer and the creditor or debt collector. 16 C.F.R. § 310.4(a)(5)(i)(B).

34. DMB has requested and received fees from consumers in connection with enrolled debts even though consumers have not made any payments under a settlement agreement, debt-management plan, or other valid contractual agreement between the consumers and the creditor or debt collector.

35. DMB's requesting or receiving payment of fees from consumers under the circumstances described in paragraph 34 is an abusive act or practice in telemarketing that violates the TSR. 16 C.F.R. § 310.4(a)(5)(i)(B).

36. In addition, DMB's violation of the TSR is treated as a violation of a rule under § 1031 of the CFPA. 15 U.S.C. § 6102(c). DMB therefore has also violated § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

**Count 2**
*DMB's Violations of the TSR and the CFPA*
*(Charging Fees in Absence of a Settlement)*

37. The Bureau incorporates by reference the allegations contained in Paragraphs 1 through 31 of this Complaint.

38. It is a violation of the TSR for any seller or telemarketer in connection with the sale of any debt-relief service to request or receive payment of any fee or consideration for any debt-relief service until and unless: (1) the seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt under a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; (2) the customer has made at least one payment under that settlement agreement, debt-management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and (3) where the debts are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration must be proportional to the debts that have been so settled, or else charged at a flat percentage of the amount saved as a result of such settlements. 16 C.F.R. § 310.4(a)(5)(i).

39. DMB has requested and received fees from consumers in connection with enrolled debts even though DMB had not renegotiated, settled, reduced, or otherwise altered the

8

terms of these debts under a settlement agreement, debt-management plan, or other such valid contractual agreement executed by the consumers, and consumers had not made any payments under a settlement agreement, debt-management plan, or other valid contractual agreement between the consumers and the creditor or debt collector.

40. DMB's requesting or receiving payment of fees from consumers under the circumstances described in paragraph 39 is an abusive act or practice in telemarketing that violates the TSR. 16 C.F.R. § 310.4(a)(5)(i).

41. DMB's violation of the TSR is treated as a violation of a rule under § 1031 of the CFPA. 15 U.S.C. § 6102(c). DMB therefore has also violated § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

**Count 3**
*DMB's Violations of the CFPA*
*(Deceptive Representations Regarding Chargeable Events)*

42. The Bureau incorporates by reference the allegations contained in Paragraphs 1 through 31 of this Complaint.

43. DMB has represented to consumers that it would not charge any fee for its services until it settled a debt and consumers have made a settlement payment to the creditor. In fact, DMB has charged consumers its fee in cases where it did not settle the consumer's debt, the consumer did not make a settlement payment, or both.

44. DMB's representations regarding when it would charge or collect its fees from consumers were likely to mislead consumers acting reasonably. The circumstances in which DMB charges consumers fees are material terms. DMB's charging of fees to consumers as described in paragraph 43 is a deceptive act or practice that violates the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

## Count 4
*DMB's Violations of the TSR and CFPA*
*(Charging Fees Based on Debt Amount after Enrollment)*

45.     The Bureau incorporates by reference the allegations contained in Paragraphs 1 through 31 of this Complaint.

46.     To the extent a seller or telemarketer renegotiates, settles, reduces, or otherwise alters a consumer's enrolled debts individually over time, the TSR prohibits the seller or telemarketer from requesting or receiving any fee or consideration unless such fee or consideration: (1) bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the consumer's entire debt balance as the individual debt amount bears to the entire debt amount, with the individual debt amount and the entire debt amount being those owed *at the time the debt was enrolled in the service*; or (2) is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration; the percentage charged cannot change from one individual debt to another, and the amount saved is the difference between the amount owed *at the time the debt was enrolled in the service* and the amount actually paid to satisfy the debt. 16 C.F.R. § 310.4(a)(5)(i)(C).

47.     DMB settles consumers' debts individually over time and has requested or received fees based on the debt amount after enrollment instead of the debt amount at the time of enrollment such that the fee neither (1) bears the same proportional relationship to the total fee as the enrolled debt amount bears to the entire debt amount at the time of enrollment; nor (2) is a percentage of the amount saved when the amount saved is the difference between the debt amount at the time of enrollment and the settlement amount.

48. DMB's practice of requesting or receiving settlement fees described in paragraph 47 constitutes an abusive act or practice in telemarketing that violates the TSR. 16 C.F.R. § 310.4(a)(5)(i)(C).

49. DMB's violation of the TSR is treated as a violation of a rule under § 1031 of the CFPA. 15 U.S.C. § 6102(c). DMB therefore has also violated § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

### Count 5
*DMB's Violations of the CFPA*
*(Deceptive Representations about Fee Structure)*

50. The Bureau incorporates by reference the allegations contained in Paragraphs 1 through 31 of this Complaint.

51. Until 2019, some of DMB's contracts represented to consumers that DMB would charge a fee based on either the amount of the "Enrolled Debt" or the "debt balance as determined at the time of enrollment." In fact, DMB charged consumers based on what DMB called "Verified Debt" amounts, which were determined after enrollment.

52. Accordingly, some of DMB's contracts misrepresented to consumers the debt amount that would be used to determine DMB's fees for debt-relief services.

53. These representations were likely to mislead consumers acting reasonably under the circumstances because they specified that the enrolled debt amount would be used to determine DMB's fee.

54. The fee that DMB charges to consumers and the debt amount on which the fee is based are material.

55. DMB's omissions and misrepresentations constitute deceptive acts or practices that violate the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

**Count 6**
*DMB's Violations of the TSR and the CFPA*
*(Failing to Disclose Amount of Time Necessary Before Settlement Offer Made)*

56. The Bureau incorporates by reference the allegations contained in Paragraphs 1 through 31 of this Complaint.

57. It is a violation of the TSR for any seller or telemarketer in connection with the sale of any debt-relief service to fail to disclose truthfully, in a clear and conspicuous manner before a customer consents to pay for those services, to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the time by which the debt-relief-service provider will make a bona fide settlement offer to each of the creditors or debt collectors. 16 C.F.R. § 310.3(a)(1)(viii)(A).

58. DMB failed to disclose before enrollment in a clear and conspicuous manner the time by which DMB would make a bona fide settlement offer to each of a consumer's creditors or debt collectors.

59. DMB's failure to disclose in a clear and conspicuous manner the time by which DMB would make a bona fide settlement offer to each of a consumer's creditors or debt collectors is a deceptive act or practice in telemarketing that violates the TSR. 16 C.F.R. § 310.3(a)(1)(viii)(A).

60. DMB's violation of the TSR is treated as a violation of a rule under § 1031 of the CFPA. 15 U.S.C. § 6102(c). DMB therefore has also violated § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

**Count 7**
*DMB's Violations of the TSR and the CFPA*
*(Failing to Disclose the Amount of Money for Each Outstanding Debt to be Saved)*

61. The Bureau incorporates by reference the allegations contained in Paragraphs 1 through 31 of this Complaint.

62. It is a violation of the TSR for any seller or telemarketer in connection with the sale of any debt-relief service to fail to disclose truthfully, in a clear and conspicuous manner before a customer consents to pay for those services, to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the amount of money or the percentage of each outstanding debt that the customer must accumulate before the debt-relief-service provider will make a bona fide settlement offer to each of the creditors or debt collectors. 16 C.F.R. § 310.3(a)(1)(viii)(B).

63. DMB failed to disclose before enrollment in a clear and conspicuous manner the amount of money or the percentage of each outstanding debt that a consumer must accumulate before DMB would make a bona fide settlement offer on the consumer's behalf.

64. DMB's failure to disclose in a clear and conspicuous manner before enrollment the amount of money or the percentage of each outstanding debt that a consumer must accumulate before DMB would make a bona fide settlement offer to each of the consumer's creditors or debt collectors is a deceptive act or practice in telemarketing that violates the TSR. 16 C.F.R. § 310.3(a)(1)(viii)(B).

65. In addition, DMB's violation of the TSR is treated as a violation of a rule under § 1031 of the CFPA. 15 U.S.C. § 6102(c). DMB therefore has also violated § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## DEMAND FOR RELIEF

The Bureau requests that the Court:

a. permanently enjoin DMB from committing future violations of the Telemarketing Act, 15 U.S.C. §§ 6102(c), 6105(d); the TSR, 16 C.F.R. pt. 310; and the CFPA, 12 U.S.C. §§ 5531, 5536(a), and any other provision of "Federal consumer financial law," as defined by 12 U.S.C. § 5481(14);

b. grant additional injunctive relief as the Court may deem just and proper;

c. order DMB to pay redress to consumers harmed by its unlawful conduct;

d. order DMB to disgorge all ill-gotten gains;

e. impose on DMB civil money penalties;

f. award costs against DMB; and

g. award additional relief as the Court may determine to be just and proper.

Respectfully submitted,

THOMAS G. WARD
*Enforcement Director*
JEFFREY PAUL EHRLICH
*Deputy Enforcement Director*
KARA K. MILLER
*Assistant Deputy Enforcement Director*

/s/ Hai Binh T. Nguyen
Hai Binh T. Nguyen (CA Bar #313503)
Patricia H. Hensler (FL Bar #102303)
*Enforcement Attorneys*
1700 G St., N.W.
Washington, D.C. 20552
Telephone (Nguyen): 202-435-7251
Telephone (Hensler): 202-435-7829
Email: haibinh.nguyen@cfpb.gov
Email: patricia.hensler@cfpb.gov